UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA BOND,

        Plaintiff,

                                        File No. 1:12-CV-517

v.

                                        HON. ROBERT HOLMES BELL

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, et al.,

        Defendants.
_____/

## OPINION

This matter is before the Court on Defendants' motion to dismiss Plaintiff's amended complaint (Dkt. No. 15). (Dkt. No. 17.) On September 17, 2012, the Court issued an order requiring Plaintiff, if she intended to file a response, to do so by September 24, 2012, as an attachment to a motion to allow late filing. (Dkt. No. 20.) Plaintiff has failed to file a response, so in accordance with that order, the Court will decide the merits of the motion to dismiss without waiting for further briefing. For the reasons that follow, Defendants' motion will be granted.

**I.**

On December 6, 2006, Plaintiff and a co-borrower closed a mortgage loan for $189,000 with First Magnus Financial Corporation ("First Magnus"). (Dkt. No. 18, Ex. 1.) This loan was evidenced by a promissory note signed by Plaintiff and her co-borrower. (Dkt. No. 18, Ex. 2.) To secure repayment of the loan, Plaintiff and her co-borrower granted

a mortgage to Mortgage Electronic Registration Services ("MERS") and its successors and assigns on the real property located at 5798 Springridge Street, Portage, Michigan 49024 ("Property"). (Dkt. No. 18, Ex. 1.) On August 13, 2010, MERS assigned the mortgage to BAC Home Loans Servicing, L.P ("BAC"). This assignment was recorded by the Kalamazoo County Register of Deeds on August 24, 2010. (Dkt. No. 18, Ex. 3.)

Plaintiff admittedly failed to make the payments required by the promissory note, accruing late fees. (*See* Dkt. No. 15, ¶ 31.) Thus, BAC initiated foreclosure proceedings. A sheriff's sale was held on March 10, 2011, and BAC purchased the property. (Dkt. No. 18, Ex. 4.) Six months later, September 10, 2011, the redemption period expired. On May 27, 2011, BAC conveyed its interest in the Property to the Federal National Mortgage Association ("Fannie Mae") by quitclaim deed. (Dkt. No. 19, Ex. 5.)

Subsequently, Plaintiff filed an action in state court seeking to rescind the foreclosure sale, void the mortgage contract, and recover damages. (Dkt. No. 1, Ex. 1.) This case was removed to federal court on May 18, 2012.

## II.

Plaintiff's complaint raises five claims: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), in particular 12 U.S.C. §§ 2605, 2607, by Countrywide Financial[1] and Bank of America; (2) fraud in the execution; (3) violation of RESPA by all other Defendants; (4) unjust enrichment; and (5) quiet title. (Dkt. No. 15.) Defendants raise

---

[1]BAC is a defendant in this suit as successor to Countrywide Financial.

three arguments in seeking dismissal. First, they allege that res judicata applies because judgment has been entered against Plaintiff in state court. Second, they allege that Plaintiff cannot challenge the foreclosure due to the expiration of the redemption period. Third, they allege that Plaintiff has failed to state a claim on which relief may be granted.

Because the second argument can be construed as asking for a decision on the merits,[2] and Defendants have not moved for summary judgment, the Court will only focus on the first and third arguments.

## A. <u>Res Judicata</u>

Defendants first argue that Plaintiff's suit is barred by res judicata because the

---

[2]Defendants assert this argument as a standing issue, although they recognize that some courts have viewed it as a merits issue. (Dkt. No. 10, at 6.) The Court finds the following discussion regarding the standing versus merits split persuasive:

> Defendants routinely seek dismissal based on an unpublished decision of the Michigan Court of Appeals, *Overton v. MERS*, 2009 Mich.App. Lexis 1209 (May 28, 2009). Many Defendants suggest the basis for the ruling in *Overton* is a lack of Plaintiff's standing once the redemption period expires, but the Court of Appeals does not actually say this. Nor would it seem like Article III standing could possibly be in doubt. After all, the Plaintiffs in such cases are the last lawful owner and possessor of the property. Moreover, they often remain in continuing possession of the property notwithstanding any Sheriff's sale and expiration of a redemption period. Moreover, Plaintiffs in such cases claim a continuing right to lawful ownership and possession based on defects in the process used by Defendants to divest them of those rights. This certainly seems to satisfy the basic Article III requirement of "injury in fact," as well as any prudential considerations tied to a "zone of interests" analysis. Indeed, it is hard to imagine a person with a better claim to standing to challenge the process at issue. Of course, having standing to bring a claim does not mean you have a valid claim on the merits. That is a different question. *Overton* is best viewed as a merits decision, not a standing case.

*Langley v. Chase Home Finance, LLC*, No. 10-604, 2011 WL 1130926, at *2 n.2 (W.D. Mich. Mar. 28, 2011) (Jonker, J.).

Michigan District Court for the 8th Judicial District already granted summary disposition against Plaintiff. That state action, between Plaintiff and Fannie Mae, regarded the same property at issue before the Court and resulted in a possession judgment in favor of Fannie Mae. (Dkt. No. 19, Ex. 6, Judgment.)

The Court is required to give the same preclusive effect to a Michigan state court judgment as such a judgment would receive in any other court in Michigan. *See* 28 U.S.C. § 1738. The extent of res judicata in Michigan is broad:

> Michigan . . . employs a broad view of *res judicata* that bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. *Res judicata* bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. Whether a factual grouping constitutes a transaction for purposes of *res judicata* is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, and whether they form a convenient trial unit. The burden of proving *res judicata* is on the party asserting it.

*Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816-17 (6th Cir. 2010) (citing *Abbott v. Michigan*, 474 F.3d 324, 330-31 (6th Cir. 2007); *In re MCI Telecomm. Complaint*, 596 N.W.2d 164, 183 (Mich. 1999); *Adair v. State*, 680 N.W.2d 386 (Mich. 2004)).

The first issue is whether the state court action was decided on the merits. "Pursuant to Michigan law, [a] state court's summary disposition amount[s] to a decision on the merits." *Grey v. Morris*, 95 F.3d 1152 (6th Cir. 1996) (citing *Wilson v. Knight-Ridder Newspapers, Inc.*, 190 Mich. App. 277 (1991); *Sherrell v. Bugaski*, 169 Mich. App. 10, 17

4

(1988)). The judgment in the state court action involving Plaintiff and Fannie Mae indicates that after a hearing, the court decided to grant Fannie Mae's motion for summary disposition. Thus, that case was decided on the merits. (Dkt. No. 19, Ex. 6.)

Second, both actions must involve the same parties. It is evident that both Fannie Mae and Plaintiff were parties in the state court action. Thus, this prong is met as to Fannie Mae. However, none of the other Defendants in the present action were parties in the state court action. Thus, this prong is not met as to Old Republic Insurance Company, Republic Mortgage Insurance Company, Bank of America Loans, MERS, or BAC Home Loan Servicing, LLC.

Last, it must be established that the issues before this Court were litigated or could have been litigated in the state court action. The test is whether the issues in this case arise from the same transaction litigated in the prior case and were raised or could have been raised in that case. *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1726 (2010); *Buck*, 597 F.3d at 817. The state court action concerned allegedly improper charges for private mortgage insurance and the right to possession of the Property. All of Plaintiff's claims before this Court also concern the private mortgage insurance and the Property. Thus, this cases arises from the same transaction.

Moreover, Plaintiff raised many of the same claims before the state court. In that suit, she counterclaimed that Bank of America and Countrywide violated RESPA (Dkt. No. 19, Ex. 7), which is the same claim as in Count 1 in this case (Dkt. No. 15, ¶¶ 19-34). She also

asserted as an affirmative defense that the quitclaim deed was fatally defective (Dkt. No. 19, Ex. 7), the same claim she makes against Fannie Mae in Count 5 (Dkt. No. 15, ¶ 63). While Plaintiff did not raise claims in state court equivalent to Counts 2-4, all of these counts – fraud, additional violations of RESPA, unjust enrichment – center around the same alleged improper charges for mortgage insurance, and are thus claims Plaintiff could have raised in state court.

Because Fannie Mae has established that all three prongs necessary for res judicata are met, Plaintiff's claims against Fannie Mae are barred by res judicata. However, because none of the other Defendants were parties in the prior action, res judicata does not apply to Plaintiff's claims against them.

### B. **Failure to State a Claim**

Additionally, Defendants argue that Plaintiff's amended complaint should be dismissed for failure to state claims upon which relief may be granted. This argument will be examined on a count-by-count basis.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. "[T]o survive a motion to dismiss [under 12(b)(6)], the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). In reviewing such a motion, the Court must "accept all

of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs and Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). As a general rule, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent*, 583 F.3d at 903.

According to the Supreme Court, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 545 (2007) (internal quotations omitted). While detailed factual allegations are not required, the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

The pleading requirement for fraud claims is stricter. Federal Rule of Civil Procedure 9(b) requires a party to plead fraud or mistake with particularity. A plaintiff "must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th 1984). Additionally, the pleading must "allege with specificity who had made the particular misrepresentations and

7

when they were made." *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 2006).

**1. Violation of RESPA by Countrywide and Bank of America**

Count one of Plaintiff's complaint regards the alleged violation of two sections of RESPA by Countrywide and Bank of America. First, Plaintiff alleges violation of 12 U.S.C. § 2607, which contains prohibitions on kickbacks. Second, Plaintiff alleges violation of 12 U.S.C. § 2605, which governs responses to qualified written requests ("QWRs").

Plaintiff's claim regarding § 2607 fails because it is barred by the statute of limitations. Pursuant to § 2614, the statute of limitations is "1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation." Plaintiff provides no details regarding the alleged kickbacks. The only allegation she makes is that these alleged kickbacks were funded through the premiums she paid for private mortgage insurance. (Dkt. No. 15, ¶ 26.) The foreclosure sale of the Property took place on March 10, 2011. Plaintiff has made no allegation that she made any premium payments after the foreclosure sale. Thus, because she did not file this action until April 13, 2012, more than one year after the foreclosure sale and more than one year after any alleged kickback could have taken place, Plaintiff's claim regarding § 2607 is barred by the statute of limitations provided by § 2614.

In any case, Plaintiff fails to state a claim under § 2607. Plaintiff does not allege that any defendant in particular had any role in an unearned fee arrangement, instead only

alleging generally that there were kickbacks. The only company implicated in these general allegations is First Magnus, who Plaintiff alleges unlawfully received a portion of her premiums, but First Magnus is not a party to the present action. (*Id.*)

Besides that unsupported general allegation regarding First Magnus, Plaintiff's complaint is devoid of any details regarding these alleged kickbacks. Consequently, the Court concludes that Plaintiff does not provide sufficient factual matter to state a claim that is plausible on its face under § 2607.

Plaintiff's claim under § 2605 also fails to state a claim for which relief may be granted. Plaintiff alleges that no one responded to her QWR, violating the affirmative statutory duty to respond to such a request. However, a necessary factor for a correspondence to constitute a QWR, is that it be "for information relating to the servicing of such loan." § 2605(e)(A)(1).

Plaintiff has presented no facts showing that she made a QWR, besides her conclusory allegation. "A conclusory allegation that the correspondence was a 'Qualified Written Request' is insufficient." *Sipe v. Countrywide Bank*, 690 F. Supp.2d 1141, 1154 (E.D. Cal. 2010). Moreover, Plaintiff fails to plead that the writing she sent regarded the servicing of her loan, which is necessary for it to constitute a QWR. *See id.* ("Nothing in the complaint indicates that the written correspondence to Countrywide concerned the servicing of Plaintiff's loan, which is required to qualify the correspondence as a 'qualified written request' under RESPA."); *Drew v. Kemp-Brooks*, 802 F. Supp.2d 889, 897 (E.D. Mich.

9

2011). Plaintiff's sole description of her alleged QWR is that in it she sought "a copy of the private mortgage insurance policy." (Dkt. No. 15, ¶ 21.) A request for such a copy is not a QWR because it is "unrelated to the servicing of the loan." *Williams v. Wells Fargo Bank, N.A., Inc.*, No. C10-00399JF, 2010 WL 1463521, at *3 (N.D. Cal. Apr. 13, 2010); *see also Phillips v. Bank of Am. Corp.*, No. C10-0400JR, 2010 WL 1460824, at *4 (N.D. Cal. Apr. 9, 2010).

At most, the only factual inference the Court can draw from Plaintiff's pleading is that her correspondence may have questioned the validity of the loan. (*See* Dkt. No. 15, ¶ 23.) Requests concerning the validity of a loan do not qualify as QWRs. "That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan." *Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp.2d 1002, 1014 (N.D. Cal. 2009). *See also MorEquity, Inc. v. Naeem*, 118 F. Supp.2d 885, 901 (N.D. Ill. 2000) ("[T]he letter sought information about the validity of the loan and mortgage documents. . . . Therefore, the request did not relate to the 'servicing' of the loan."); *Gates v. Wachovia Mortgage, FSB*, No. 2:09-CV-02464 (E.D. Cal. 2010) ("[N]either an inquiry into the ownership of a loan, nor an allegation of a defective loan documentation, are sufficient to transform an otherwise non-qualifying correspondence into a QWR.").

Moreover, even if Plaintiff's correspondence was accepted as a QWR, Plaintiff has failed to allege actual damages, a requirement to make out a § 2605 claim. § 2605(f)(1); *see*

*also Battah v. ResMAE Mortg. Corp.*, 746 F. Supp.2d 869, 876 (E.D. Mich. 2010) ("To successfully plead a RESPA claim, Plaintiff must allege actual damages, which resulted from . . . the failure to respond to Plaintiff's QWRs."); *Jarbo v. BAC Home Loan Servicing*, No. 10-12632, 2010 WL 5173825, at *5 (E.D. Mich. Dec. 15, 2010) ("To the extent Plaintiffs allege that Defendants failed to respond to a Qualified Written Request ('QWR') under RESPA, Plaintiffs fail to state a claim upon which relief can be granted because they allege no facts showing that damages occurred as a result of that failure."). All of Plaintiff's alleged damages under this count refer to allegedly improper overcharges and late fees, neither of which Plaintiff alleges resulted from a failure to respond to her correspondence. (Dkt. No. 15, ¶¶ 28-29.)

Consequently, the Court finds that Plaintiff does not provide sufficient factual matter to state a claim under § 2605 that is plausible on its face.

**2. Fraud in the Execution**

Count II of Plaintiff's complaint accuses "First Magnus and its agents" and "Old Republic and its subsidiaries and agents" of fraud. (Dkt. No. 15, ¶¶ 35-42.) These allegations of fraud have not been plead with particularity as required by Federal Rule of Civil Procedure 9(b).

To make out a fraud claim, a plaintiff "must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th 1984). Additionally, the pleading must "allege with specificity who

11

had made the particular misrepresentations and when they were made." *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 2006).

Plaintiff provides only conclusions in making out her fraud claim. Her first example of fraudulent representation is that "First Magnus and its agents" represented to her "that what they called 'private mortgage insurance' was actually private mortgage insurance which provided insurance coverage." (Dkt. No. 15, ¶ 36.) But Plaintiff fails to allege any facts that she was not actually provided with insurance coverage. Nor does she describe with specificity who made representations to her, what exactly those representations entailed, or when those representations occurred. All she does is refer to the vague grouping of "First Magnus and its agents," who allegedly made such representations. (*Id.* at ¶¶ 36-37.)

Additionally, Plaintiff alleges that no one ever told her that her "private mortgage insurance" included an illegal kickback scheme. (*Id.* at ¶ 38.) However, she fails to allege anything from which such an illegal scheme could be inferred. Nor does she provide any specific allegations of who made a misrepresentation or when. Instead, she draws another conclusion without providing any factual basis in her pleadings.

Plaintiff also asserts that she "reasonably relied" on the representations of First Magnus and its agents (*Id.* at ¶ 37), without describing what those representations were, how she relied on them, or why her reliance was reasonable. Merely asserting that "but for" these vague alleged misrepresentations she would not have executed the mortgage agreement or lost her home is insufficient. (Dkt. No. 15, ¶¶ 39-41.) Those are unsupported conclusions

12

which require unwarranted factual inferences to reach. For this reason, and those state above, Plaintiff has failed to state a claim upon which relief may be granted.

### 3. Violation of RESPA by Every Other Defendant

Third, Plaintiff alleges that MERS and Fannie Mae (as agents of First Magnus) and "each of the assignees" knew or should have known about the alleged fraudulent scheme run by First Magnus and the alleged kickbacks.[3] (Dkt. No. 15, ¶¶ 43-52.) However, liability under § 2607 is limited to persons who "give" or "accept" such alleged kickbacks. § 2607(a), (b). Plaintiff's only allegation that any entity other than First Magnus received illegal kickbacks is the conclusory statement that "[e]ach and every Defendant has received unearned fees from the bogus [private mortgage insurance]." (Dkt. No. 15, ¶ 52.) The pleadings provide no factual support for this statement, and to accept it as true requires unwarranted factual inferences. Because this claim lacks plausibility on the face of the pleadings, the Court will dismiss Count 3 for failure to state a claim upon which relief can be granted.

### 4. Unjust Enrichment

In Count 4, Plaintiff alleges that every Defendant has benefitted from this same allegedly fraudulent scheme. Under Michigan law, to state a claim for unjust enrichment, a plaintiff must allege that: (1) the defendant received a benefit from the plaintiff; and (2) an inequity would result if the defendant were permitted to retain the benefit without

---

[3]This Count does not allege a violation of § 2605.

compensating the plaintiff. *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (2003); *see also Innotext, Inc.* v. *Petra'lex USA Inc.*, No. 10-2010, 2012 WL 3932044, at *10 (6th Cir. Sept. 11, 2012). Under these circumstances, "the law will imply a contract in order to prevent unjust enrichment." *Belle Isle Grill*, 666 N.W.2d at 280. Nevertheless, "a contract will be implied only if there is no express contract covering the same subject matter." *Id*.

Plaintiff fails to make out a plausible claim. First, there is a contract governing the payments she made under the allegedly fraudulent scheme. (*See* Dkt. No. 18, Ex. 1, Mortgage, ¶ 10 ("If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums.")). That means, absent a showing of the contract's invalidity, the Court cannot provide Plaintiff with relief under an unjust enrichment theory. Plaintiff has not pleaded any facts establishing the mortgage agreement's invalidity (besides her conclusory, unsupported allegations of misrepresentations). Second, Plaintiff has failed to plead any facts whatsoever that she conferred an inequitable benefit on any of the Defendants. As discussed above, besides Plaintiff's one-sentence, bare allegation that all Defendants received kickbacks, there is absolutely no support in the pleadings for this conclusion. Thus this Count will be dismissed pursuant to Rule 12(b)(6).

**5. Quiet Title**

Last, Plaintiff contends that Fannie Mae's interest in the Property is dependent on a defective quitclaim deed, and thus she seeks to quiet title. Any individual who claims a right in or title to land may bring an action against anyone who claims an inconsistent interest.

Michigan Comp. Laws § 600.2932(1).  In order to establish superior title, a plaintiff bears the initial burden of proof and must demonstrate a *prima facie* case for title at which point the burden of proving superior title then shifts to the defendant.  *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Comm'r*, 600 N.W.2d 698, 700 (Mich. Ct. App. 1999); *Stinebaugh v. Bristol*, 347 N.W.2d 219, 221 (Mich. Ct. App. 1984).  In this regard, establishing a *prima facie* case of title requires a description of the chain of title through which ownership is claimed.  *Johns v. Dover*, No. 291028, 2010 WL 2696656, at *1 (Mich. Ct. App. July 8, 2010).

Plaintiff makes no attempt to establish the validity of her claim to title.  Instead she challenges the authority of MERS to assign its interest in the Property to Fannie Mae.[4]  (Dkt. No. 15, ¶ 63.)  A "Plaintiff's failure to 'provide [any] legal or factual justification for [his] quiet title claim other than the conclusory allegation that the foreclosure was wrongful, invalid, and voidable' necessitates dismissal of his quiet title claim."  *Mekani v. Homecomings Fin., LLC*, 752 F. Supp.2d 785, 796 (E.D. Mich. 2010) (quoting *Urbina v. Homeview Lending Inc.*, 681 F. Supp.2d 1254, 1262 (D. Nev. 2009)).  Because Plaintiff provides no legal or factual justification to support the conclusory allegation that Fannie Mae lacks valid title, Count 5 will be dismissed pursuant to Rule 12(b)(6).

### III.

Plaintiffs' claims against Fannie Mae are all precluded under res judicata.  Plaintiff

---

[4] In actuality, it was BAC which assigned its interest to Fannie Mae by quitclaim deed. (Dkt. No. 19, Ex. 5.)

15

and Fannie Mae were both parties in a prior state court action which concerned the same issues and resulted in a judgment on the merits in Fannie Mae's favor.  Moreover, Plaintiff's claims against all Defendants will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff has not stated a claim upon which relief can be granted because her pleadings consist of conclusory statements and unwarranted factual inferences.

An order consistent with this opinion will be issued.


Dated: October 4, 2012                          /s/ Robert Holmes Bell
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE